UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:16-CV-24943-JAL

AYNOUR SOLIMAN,

     Plaintiff,

vs.

SOBE MIAMI, LLC d/b/a PALACE BAR, a
Florida limited liability company, and THOMAS
J. DONALL, individually,

     Defendants.

_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants, SOBE Miami, LLC d/b/a Palace Bar ("Palace") and Thomas J. Donall
("Donall") (collectively "Defendants"), by and through their undersigned counsel and pursuant to
Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully submit this motion for
summary judgment and memorandum of law in support thereof.

**SUMMARY OF ARGUMENT**

Plaintiff, a former sever at Palace, sued Defendants claiming she is owed certain minimum
and overtime wages under the Fair Labor Standards Act ("FLSA").  Her lawsuit also includes a
claim under 26 U.S.C. § 7434(a) for allegedly issuing Plaintiff false information returns.  Palace
is a restaurant/bar located in Miami Beach, Florida.  Donall is the owner of SOBE Miami, LLC,
which does business as Palace.

Defendants maintain, as a commissioned employee working in a retail or service
establishment, Plaintiff was exempt, and therefore summary judgment is appropriate as to her
overtime claims.  Specifically, the FLSA exempts from its overtime provisions commissioned
employees who: (1) work in a retail or service establishment; (2) earn more than 1.5 times

minimum wage; and (3) receive more than 50% of their income from commissions, including mandatory service charges imposed by the employer. 29 U.S.C. § 207(i) ("§ 7(i)"). The undisputed evidence conclusively establishes that Plaintiff satisfied this test and is exempt. She also consistently earned more than minimum wage.

In the alternative, if the Court determines Plaintiff was not exempt under § 7(i), summary judgment is still warranted. While Defendants dispute there was a tip pool, if there was one as Plaintiff suggests, the tip pool would have been valid. As such, Palace was entitled to take a tip credit of $3.02 on the wages paid to Plaintiff because only those employees who customarily and regularly received tips participated in the tip pool. Further, since Plaintiff was always paid at least $5.03 per hour in wages, the applicable minimum wage in Florida, Palace did not violate the minimum wage provisions of the FLSA. Moreover, while a valid tip pool would require the payment of overtime wages in the event a non-exempt employee worked more than forty (40) hours in a workweek, any overtime wages owed to Plaintiff were *di minimis*.

Summary judgment is also warranted on Plaintiff's claims seeking individual liability against Donall, who she alleges was her "employer" under the FLSA. Donall, however, was not Plaintiff's employer as defined by the FLSA. Rather, Donall is the owner of Palace in name only and asserted virtually no operational control over it. Thus, Donall should dismissed from this action.

Finally, in addition to Plaintiff's wage claims, summary judgment is appropriate on Plaintiff's tax claim. Plaintiff alleges that Defendants filed false tax returns stating that she earned more money than she actually did. In other words, she claims Defendants overstated her income requiring her to pay additional taxes. The undisputed evidence, however, shows that Plaintiff's W-2's are correct and reflect only those wages actually paid to Plaintiff. Further, Plaintiff's tax

records show she actually understated her income to the IRS by failing to report the tips paid to her by Palace customers.  Thus, Plaintiff's tax claim must fail as a matter of law.

For these reasons, Defendants respectfully request that this Court grant their motion for summary judgment and dismiss Plaintiff's complaint in its entirety.

## FACTUAL BACKGROUND

For purposes of this motion, Defendants rely on their Statement of Undisputed Material Facts ("SUMF") pursuant to Local Rule 56.1(a), which is incorporated herein by reference.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is designed to dispose of meritless claims before engaging in a frivolous and costly trial.  See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Thus, summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *See Celotex*, 477 U.S. at 322; *see also Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983) (summary judgment should be granted when the moving party meets its burden in showing the absence of a genuine issue as to any material fact).

In considering a motion for summary judgment, the court is not required to, nor should it, "scour the record in search of the evidence that would defeat" the motion, this duty belongs to the non-moving party alone. *Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp.2d 1314, 1322 (M.D. Fla. 2002) (citing *Celotex*, 477 U.S. at 324).  To that end, the non-moving party must file affidavits, depositions, or other documents to persuade the Court that there are material facts in the case that

must be presented to the jury. *Webb, et al. v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1466 (11th Cir. 1998). Plaintiff must identify disputed facts that could affect the outcome of her claims under governing law to satisfy the "materiality" requirement, and thereby preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Moreover, "mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." *Louis-Charles v. Sun Sentinel Co.*, 595 F. Supp.2d 1304, 1306 (S.D. Fla. 2008) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).

## ARGUMENT

### I.   PLAINTIFF'S OVERTIME CLAIM FAILS BECAUSE SHE WAS EXEMPT UNDER § 7(i) OF THE FLSA.

Whether an employee falls within the § 7(i) overtime exemption of the FLSA is a question of law that is ripe for this Court's resolution on summary judgment. *See Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (whether an employee's payments constituted commissions under § 7(i) "is an issue of law"); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1174 (7th Cir. 1987) (affirming district court's order granting summary judgment for defendant because the hotel's banquet servers satisfied all requirements under § 7(i) of the FLSA).

Where, as here, the undisputed facts demonstrate that Plaintiff is exempt from the FLSA's overtime requirements and was paid more than minimum wage, Defendants are entitled to summary judgment as a matter of law. *Webb*, 999 F. Supp. at 1466 (granting summary judgment for the defendant on the grounds that employees were exempt under the FLSA); *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1361 (N.D. Ga. 2009) (granting defendant's motion for summary

judgment because employee was exempt from FLSA's overtime requirements under § 7(i)).[1]  Of significance, a defendant does not bear any heightened burden of proof in establishing the applicability of an exemption; a defendant need only prove the exemption applies by a preponderance of the evidence.  *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507 (7th Cir. 2007).

Generally, the FLSA's overtime provisions require employers to pay covered employees time-and-a-half (overtime) for all hours worked over forty in a workweek. *See* 29 U.S.C. § 207(a)(2009). These provisions, however, do not apply if the employee is exempt.  Plaintiff is exempt under § 7(i) of the FLSA, which applies to commissioned employees working in a retail or service establishment.  Because the § 7(i) exemption was enacted to address inequities that can arise in paying overtime to commissioned employees, it is based on the method of compensation, rather than the duties of the employee. *E.g., Gieg v. DDR, Inc.*, 407 F.3d 1038, 1047 (9th Cir. 2005).

Indeed, three requirements must be satisfied to establish the applicability of the § 7(i) exemption: (1) the employee's regular rate of pay must exceed 1.5 times minimum wage; (2) more than half of the employee's compensation for a representative period (not less than one month) must represent commissions on goods or services;[2] and (3) the employee must work in a "retail or service establishment."  29 U.S.C. § 207(i); *Mechmet, supra*, 825 F.2d at 1174.  Here, as discussed below, all three requirements are satisfied.

---

[1]  *See also Louis-Charles*, 595 F. Supp. 2d 1304 (S.D. Fla. 2008) (granting summary judgment for defendant on the grounds defendant's employees were properly classified as exempt under the FLSA).

[2]  The statute does not define "commission," but it is clear that the word need not be used for the exemption to apply. *Mechmet, supra*, 825 F.2d at 1177; *Klinedinst*, 260 F.3d at 1257; 29 C.F.R. § 779.416.

**A.     Plaintiff's regular rate of pay exceeded 1.5 times the minimum hourly rate during her entire tenure with Palace.**

The undisputed facts conclusively establish that Plaintiff's compensation exceeded 1.5 times the minimum hourly wage rate. The regular rate is calculated by dividing the total compensation received by the total hours worked.  *See* 29 C.F.R. §778.118 (citing *Missel, supra*, 316 U.S. 572); *Klinedinst, supra*, 260 F.3d at 1256.  Here, during the years 2015 and 2016, the minimum hourly wage rate in Florida was $8.05 per hour and 1.5 times the minimum hourly wage rate was $12.08 per hour.  The undisputed evidence (i.e., Palace's time and payroll records) establishes that Plaintiff's regular rate of pay was "consistently and obviously higher than required to meet the test." (*See* Wage and Hour Field Operations Handbook, Section 21h03(a), Appendix Ex. F.) When this is the case, a week-by-week examination demonstrating that Plaintiff never earned less than one-and-one-half times minimum wage is not required to comply with this element of § 7(i). *See id.* (a "week-by-week determination of the regular rate for purposes of section 7(i) is not necessary if the earnings are consistently and obviously higher than required to meet the test").  However, Plaintiff never earned less than $12.08 per hour during her entire tenue.[3] In fact, Plaintiff on average earned over $26.00 per hour.  This is more than the minimum wage rate of $8.05 per hour and more than 1.5 times the minimum wage rate of $12.08.  As such, Plaintiff satisfies this requirement.

**B.     Commissions represent more than half of Plaintiff's compensation.**

Plaintiff satisfies the second requirement of the § 7(i) exemption because she earned more than 50% of her income from the automatic service charges, which qualify as commissions under § 7(i).  A "service charge" added by Palace to every customer's bill, and then distributed (in whole or in part) to its staff is properly classified as a "commission," and not a gratuity under the FLSA.

---

[3] *See* SUMF at ¶ 71.

*Nascembeni v. Quayside Palace Partners, LLP*, 2010 WL 2351467*2 (S.D. Fla. June 11, 2010).

Further, a "service charge" is a commission despite the fact the parties may describe it colloquially

as a gratuity or a tip.  *Id.* (explaining that a service charge is not a tip if the customer had no

discretion of whether to pay it or not).  This conclusion is consistent with the United States

Department of Labor's ("DOL") own internal guidelines.[4]  In the Wage and Hour Division's Field

Operations Handbook, the DOL states that a

> service charge levied on its customers by an establishment e.g.,
> hotel, motel, or restaurant, for services rendered by waiters,
> waitresses … may qualify as a 'commission' pursuant to Sec. 7(i)
> … because a service charge that is completely or partially paid to
> such employees is keyed to sales since it bears a direct relationship
> to the goods and services which the establishment sells, and it is a
> specific percentage of the bill presented to the customer….

Here, as confirmed by Plaintiff, an automatic 20% service charge was added to every

customer's check.[5]  Palace then distributed a portion of this service charge to their servers, such as

Plaintiff.  Plaintiff was also paid wages at the rate of $5.03 per hour.  A review of Palace's time

and payroll records show that Plaintiff's portion of the automatic service charge (her commissions)

was always greater than the hourly wage rate paid to her. (SUMF at ¶ 72).  As such, as a matter of

law, more than 50% of Plaintiff's total earnings were in the form of commissions.

**C.    Palace is a retail or service establishment.**

Palace is a "retail or service establishment" under the FLSA.  To establish that Plaintiff

was employed in a "retail or service establishment" Defendants must show: (1) 75% of the annual

---

[4] *See Klinedinst,* 260 F.3d at 1255 ("Although the Field Operations Handbook is not entitled to Chevron deference, we find it persuasive" regarding interpretation of "commissions" under § 7(i).) (footnote omitted).
[5] Plaintiff confirmed with respect to the mandatory nature of the service charge that: "we all have to have on the checks twenty percent," "we have a right to put it on the check because that's how we make our money," and "at the end when the customer asks for the check then we add the service charge, twenty percent, and it would say twenty percent gratuity added, automatically added on the check and it was just suggested extra tips for customers to add extra also." *See* SUMF at ¶ 8, 9 and 13.

revenue generated is not from services or goods that are provided for resale;[6] and, (2) the services provided are recognized as "retail sales or services" in the particular industry. 29 U.S.C. § 213(a)(2) (repealed 1990).[7] As demonstrated below, Congress, federal courts, and the DOL have made clear that restaurant servers are employed in a "retail or service establishment."

When Congress amended the definition of a "retail or service establishment" to better define those entities that fell within the definition, it expressly identified restaurants as establishments covered by the definition. During the debate regarding the amendment, when asked what type of service establishments would be exempt, the chief sponsor of the amendment, Senator Holland, expressly stated restaurants were covered. 95 Cong. Rec. 12505 (1949) ("Generally, restaurants, hotels … and other establishments performing local services."). Thus, the term "retail or service establishment" includes restaurants. Of significance, DOL regulations provide that the legislative history is the first source that should be examined in determining whether the service is "recognized" as a service establishment. 29 C.F.R. § 779.326. The legislative history here is dispositive that restaurants are retail or service establishments.

Finally, the DOL has further confirmed this legislative intent by identifying restaurants as touchstone examples of what Congress intended when it drafted the words "retail or service establishment." 29 C.F.R. §779.314 ("services rendered by establishments which are traditionally regarded as local retail service establishments such as the restaurants, hotels … It is to these latter services only that the term 'service' refers."). Additionally, the DOL provides a partial list of establishments whose goods or services may be recognized as retail, including "auto dealerships,

---

[6] This technical element is not in dispute.

[7] No statutory definition of "retail or service establishment" currently exists. When it passed § 7(i) in 1961, Congress specifically stated that "retail or service establishment" was to be given the same meaning as the term in § 213(a)(2). Although the definition of this term in § 213(a)(2) was repealed in 1990, courts still use this definition in applying § 7(i) because no congressional intent has been shown to modify the definition. *See Reich v. Delcorp., Inc.,* 3 F.3d 1181, 1183 (8th Cir. 1993); *Reich v. Cruises Only, Inc.,* 1997 U.S. Dist. LEXIS 23727 at *7 (M.D. Fla. 1997).

restaurants, hotels, book stores, clothing stores, grocery stores, and furniture stores." 29 C.F.R. § 779.320.

The legislative history, judicial interpretation, and administrative pronouncements all demonstrate Congress' manifest intent that restaurants be considered retail and service establishments and that a restaurant's sales be considered retail for purposes of the FLSA. When, as here, the legislative history clearly establishes that Congress intended a particular industry to be a retail or service establishment, the court's inquiry is concluded. S*ee, e.g., Hodgson v. Duke University, supra*, 460 F.2d at 174-76; *Hodgson v. Crotty Bros. Dallas, Inc.,* 450 F.2d 1268, at 1280-81 and n. 31. The Palace Bar is a restaurant/bar. (SUMF at ¶ 2.) Consequently, it is, as a matter of law, a "retail or service establishment" under the FLSA.

Therefore, because the undisputed facts establish that Plaintiff is exempt from the overtime provisions of the FLSA under the § 7(i) exemption and that she was paid more applicable than minimum wage, this Court should enter summary judgment in Defendants' favor and dismiss Plaintiff's FLSA claims.

## II.   IF PALACE HAD A TIP POOL, WHICH IT DISPUTES, IT WOULD HAVE BEEN VALID.

For a tip pool to be valid, the employee must first be made aware of it. *Garcia v. Koning Restaurants Intern., L.C.*, 12-CV-23629, 2013 WL 8150984, at *4 (S.D. Fla. 2013) (verbal or written notice is permitted, also noting that it may give notice through a proper DOL poster explaining the tip credit). It is also noted that "[i]t has even been held that information conveyed through co-workers was sufficient notice." *Id.*, quoting *Dominguez v. Quigley's Irish Pub, Inc.,* 790 F.Supp.2d 803, 822 (citing *Davis v. B & S, Inc.,* 38 F.Supp.2d 707, 719 (N.D.Ind.1998)). Here, there is no dispute that if there was a tip pool (which Defendants dispute), Plaintiff was aware of it and made no allegations in her complaint to the contrary.

In addition to the notice requirement, section 203(m) of the FLSA requires that in order for a tip pool to be valid, participating employees must be "employees who customarily and regularly receive tips." *Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F. 3d 294, 300 (6th Cir. 1998). Subsection 203(t) requires that for an employee to be a tipped employee, the employee must both "customarily and regularly receive tips," which is identical to the subsection 203(m) requirement, and be engaged in an occupation in which the employee customarily and regularly receives tips. *Id.* at 301.  Thus, if an employee fulfills the requirements of subsection 203(t), the employee necessarily fulfills the requirements of subsection 203(m). *Id.*  Based on the plain meaning of the statute, however, it is possible that an employee may "customarily and regularly" receive tips and be allowed to participate in a tip pool, but not meet the occupational or minimum tip requirements to allow the employer to use those tips as a basis for taking the tip credit. *See Pellon v. Business Representation Int., Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007) ("ordinary meaning" analysis should apply to interpretation of section 203(m) of the FLSA). According to the DOL, the phrase "customarily and regularly" signifies a "frequency which must be greater than occasional, but which may be less than consistent." 29 C.F.R. § 531.57

In determining whether an employee "customarily and regularly receive tips," a number of cases suggest that an employee's level of customer interaction is the most significant factor in evaluating whether the employee qualifies as a tipped employee. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F.Supp.2d 1353, 1359 (S.D. Fla. 2009) citing *Rousell v. Brinker Intern, Inc.*, 2008 WL 2714079 at *7, *10 (S.D. Tex. July 9, 2008) (agreeing with the Sixth Circuit that the level of customer interaction is "*highly relevant*" and that the extent of an employee's interaction with customers is "*critical*" in determining whether an employee may participate in a tip pool) (emphasis added). Indeed, the focus is properly drawn to the question of whether the employee

performs important customer service functions, i.e., does the employee have more than *de minimis* service interaction with customers. *Wajcman v. Inv. Corp. of Palm Beach*, 2008 WL 783741 *3 (S.D. Fla. March 20, 2008).

Here, the only employees who receive a portion of the automatic 20% service charge are servers who receive 15% and bartenders, food runners, houseman, and managers who receive the remaining 5%. (SUMF at ¶ 17-18.)  Plaintiff claims that the managers' participation in the tip pool (assuming there was one) makes it unlawful.  First, as stated, Palace disputes there was a tip pool. Second, if the Court deems otherwise, manager participation and receipt of a portion of the automatic service charge does not make it unlawful since managers are considered employees who customarily and regularly receive tips.  Third, managers perform important customer service functions and have a significant amount of interaction with the customers. (SUMF at ¶ 81.) Indeed, managers seat customers, serve food, bus tables, interact with customers, and handle customer complaints.  (SUMF at ¶ 82-83.)  They are out on the floor working almost the entirety of their shift. (SUMF at ¶ 83.)  They do not spend their shifts sitting in an office or only policing staff. (SUMF at ¶ 83.)   While managers simultaneously oversee the staff while performing these other functions, they nonetheless spend the overwhelming majority of their time interacting with customers and performing important customer functions. (SUMF at ¶ 83.)  Therefore, to the extent this Court determines there was a tip pool, it should be deemed valid, and given that Plaintiff received wages and commissions which exceeded the lawful minimum wage, her minimum wage claim should be summarily dismissed as well.  Further, while she would not be exempt from the FLSA if this Court determined there was a tip pool, Palace's documents show that she would only

be owed $187.46, which is *de minimis* and therefore Plaintiff's overtime claims should be dismissed.[8]

## III. PLAINTIFF'S CLAIMS FOR MINIMUM WAGE AND OVERTIME VIOLATIONS AGAINST DONALL FAIL BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT HE IS NOT AN "EMPLOYER" WITHIN THE MEANING OF THE FLSA.

In order for Donall to be individually liable for violating the overtime and minimum wage provisions of the FLSA, he must be an "employer" as that term is defined by the FLSA. *See* 29 U.S.C. § 206(a). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee.…" *See* 29 U.S.C. §203(d). Individuals as well as business entities are included in the FLSA's definition of "person." *See id.*at §203(a).

In determining whether an individual is an "employer," courts have long assessed the economic reality of the relationship between the employee and the alleged employer. *See Goldberg v Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961); *Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986). Where a corporate officer, such as Donall, does not exercise operational control over the entity he is not considered an "employer" under the FLSA. *See Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1161 (11th Cir. 2008); *Patel,* 803 F.2d at 638.

In analyzing whether Donall had operational control over Palace, the Court should focus on the actual role Donall played at Palace instead of the theoretical role he could have played due to his position as the owner of SOBE Miami, LLC. *See Patel*, 803 F.2d at 638; *Perez*, 515 F.3d at 1161. While no specific test for operational control has been delineated, courts have determined that "operational control includes things like determining employee compensation, supervising

---

[8] Calculating the hours from the Breadcrumb reports (which Plaintiff states are accurate SUMF at ¶ 70 and Ex. 2 to Ex. A) and the wages paid to Plaintiff ( SUMF at ¶ 27-69 and Ex. 1 to Ex. A), assuming Plaintiff is not exempt under § 7(i), Plaintiff would be owed $229.17 in overtimes wages for 2015, but she was overpaid by $41.71 in 2016 (since she often failed clock-out and was paid for the time). Thus, the total overtime owed would be $187.46.

employees, and having the power to hire or fire employees." *Phillips v. M.I. Quality Lawn Maint., Inc.*, No. 10-20698-CIV-SEITZ/O'SULLIVAN, 2011 U.S. Dist. LEXIS 14325, at *8 (S.D. Fla. Feb. 14, 2011) (citing *Perez*, 515 F.3d at 1160-61).

Using the aforementioned factors, it is clear that there is no basis for holding Donall individually liable under the FLSA.  ***Donall did not determine employee compensation other than that of the general manager.  He did not supervise employees, and he did not exercise any authority to hire and fire them.*** (SUMF at ¶ 3, 4, 5, 6 and 7.)  In fact, the record is clear that Donall has not involved himself in the management of Palace other than with respect to the hiring and firing of the general manager, but instead served as the owner of the business in name only acting as the creative side for the business. (SUMF at ¶ 4.)  Such a factual scenario is not sufficient to establish that he acted as an "employer" under the FLSA.

Indeed, courts in the Eleventh Circuit have unanimously held that merely being named an officer or director is not sufficient to establish individual liability under the FLSA.  For example, in *Patel*, *supra*, the Eleventh Circuit held that a defendant who was the president, director, and a principal stockholder of a company sued for overtime violations was not an "employer" under the FLSA, because he did not "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee."  *Patel*, 803 F.2d at 637-38.  Although the Eleventh Circuit acknowledged that the Defendant, ***could*** have played a greater role, rather than deal with theoretical control or conjecture, the Court focused on the actual role the defendant played with the company.  *Id*.  Taking the same approach here leads inescapably to the conclusion that Donall was not an employer as that term is defined by the FLSA.

Another instructive case is *Escobar v. Orlando Brewing Partners, Inc.*, Case No. 6:05-cv-64-Orl-KRS, 2005 U.S. Dist. LEXIS 30709 (M.D. Fla. Dec. 5, 2005). In *Escobar*, an employer's ex-wife was *named* as a defendant in an action under the FLSA for overtime violations. *Id*. at 2-3. There, plaintiff alleged that the ex-wife was an "employer" under the FLSA solely by virtue of her being listed on the articles of incorporation as an officer of the company and because she occasionally performed minor clerical duties for the employer, such as writing checks. *Id*. In holding that the ex-wife was not an "employer" under the FLSA, the Court reasoned:

> Here, the evidence on record indicates that Jants was an ***officer in name only.*** She ***did not*** direct the day-to-day operations of the business, did not set employee schedules, ***did not*** contract with vendors or employees, and could not hire or fire employees. Her entire contact with the business was limited to writing checks on the corporate account. While she wrote checks for Escobar, there is no evidence that she had any authority to determine whether he should be paid or the amount to be paid. In other words, ***she had little or nothing to do 'in relation to' Escobar as an employee.*** 29 U.S.C. § 203(e). Because Jants had so little to do with the operation of the business, I conclude that ***she 'did not take such an active role as to be held personally responsible' for any alleged violations of the FLSA.***

*Id*. at 7. (emphasis added). Thus, because the ex-wife was an officer in name only, and had minimal involvement with the company, she was found not be an employer under the FLSA and summary judgment was granted in her favor. *Id*.

A similar result is compelled here. Donall did not involve himself in the day-to-day operations of Palace. He did not hire or fire employees other than the general manager. (SUMF at ¶ 6.) He did not supervise employees, and he did not determine employee compensation. (SUMF at ¶ 7.) Instead, like the defendants in *Escobar* and *Patel*, *supra*, Donall is the owner of SOBE Miami, LLC – essentially an officer or director in name only – which is not sufficient to establish liability as an "employer" under the FLSA. *Id*. Accordingly, because Plaintiff cannot establish that Donall is an "employer" as that term is defined under the FLSA, summary judgment is warranted on Plaintiff's claims against Donall.

## IV.   PLAINTIFF'S FRAUDULENT TAX RETURN CLAIM FAILS BECAUSE SHE CANNOT ESTABLISH THE RETURNS ARE FRAUDULENT.

As a general matter, statutory interpretation is a question of law properly resolved on summary judgment. *Swanson v. Worley*, 490 F.3d 894, 899 (11th Cir. 2007). The task in interpreting the meaning of § 7434(a) begins where all such inquiries must begin: with the language of the statute itself. *Katzman v. Essex Waterfront Owners, LLC,* 600 F.3d 565, 568 (2d Cir. 2011) (quoting *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).  It is also where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms. *Id.*  Thus, where the undisputed evidence shows Plaintiff's W-2's are correct and Plaintiff's tax returns are only inaccurate because of her own failure to include her earned tips, summary judgment should be granted.

The Internal Revenue Codes states that "if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action against the person so filing such return." 26 U.S.C. § 7434(a).

In the tax context, fraud requires "intentional wrongdoing" and an "intent to deceive." *Vandenheede v. Vecchio*, 541 Fed.Appx. 577 (6th Cir. 2013); *Zell v. C.I.R.*, 763 F.2d 1139, 1143-44 (10th Cir. 1985).  Further, the "return" itself must be fraudulent. *Bailey v. Small Western E&P*, 1998 WL 185520*2 (N.D. Tex. April 14, 1998).  To establish a claim of tax fraud under 26 U.S.C. § 7434, the Plaintiff must prove: (1) that Palace issued an information return; (2) that the information return was fraudulent; and (3) that Palace willfully issued a fraudulent information return. *Saijo v. Casa Salsa, Inc.*, 2013 WL 6184969*7 (S.D. Fla. Nov. 12, 2013).  Courts have interpreted the term "willfully" as requiring proof of deceitfulness or bad faith in connection with filing an information return.  *Saijo*, 2013 WL 6184969*7.

Here, Plaintiff's W-2's are correct and only include the wages and commissions paid to Plaintiff by Palace. They do not include the discretionary tips left by customers. (SUMF at ¶ 73 74, 75 and 76.) Contrary to Plaintiff's allegations that her W-2's show more money than she actually earned because it included monies paid to others, the opposite is true. (SUMF at ¶ 75 and 76.) The W-2's do not include income paid to others, only Plaintiff (SUMF at ¶ 27- 69 (adding the amounts paid to Plaintiff each year and comparing the W-2's – the numbers match). Further, Plaintiff's tax returns show that she never included the tips paid to her by customers. She only showed income reported on the W-2's issued to her by Palace. Indeed, it is Plaintiff that did not properly report her income to the IRS and not the other way around. In 2015, Plaintiff failed to report $12,859. 02 (SUMF at ¶ 77) in reported tips and in 2016, she failed to report $15,074.14 (SUMF at ¶ 78) in reported tips (totaling $27,933.16 for the two years). As such, summary judgment is warranted on Plaintiff's tax claim as the only potential fraudulent activity is Plaintiff's and not that of Palace.

## CONCLUSION

Based on the foregoing undisputed material facts, authority, and arguments, Defendants respectfully request this Court grant their motion for summary judgment, enter judgment in favor of Defendants, award them attorney's fees and costs as well as all other relief deemed just and proper.

By:   /s/  Jamie B. Dokovna
Jamie B. Dokovna, Esq.
Florida Bar No. 592722
BECKER & POLIAKOFF, P.A.
Counsel for Defendants
625 N. Flagler Drive, 7th Floor
West Palm Beach, FL  33401
Telephone:  (561) 655-5444
Facsimile:  (561) 832-8987
jdokovna@bplegal.com
bmichenfelder@bplegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of November 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BECKER & POLIAKOFF, P.A.
Attorneys for Defendants
625 N. Flagler Drive, 7th Floor
West Palm Beach, FL  33401
Telephone:  (561) 655-5444
Facsimile:  (561) 832-8987
jdokovna@bplegal.com
bmichenfelder@bplegal.com

By:   /s/  Jamie B. Dokovna
        Jamie B. Dokovna, Esq.
        Florida Bar No. 592722

## SERVICE LIST

**Roderick V. Hannah, Esq.**
RODERICK V. HANNAH, ESQ., P.A.
8751 West Broward Blvd, Suite 303
Plantation, FL  33324
rhannah@rhannahlaw.com
*Counsel for Plaintiff*

**Pelayo M. Duran, Esq.**
LAW OFFICE OF PELAYO DURAN, P.A.
4640 N.W. 7th Street
Miami, FL  33126-2309
pduran@pelayoduran.com
kflynn@rhannahlaw.com
mperez@pelayoduran.com
*Co-Counsel for Plaintiff*