## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24943-CIV-LENARD/GOODMAN

**AYNOUR SOLIMAN,**

     Plaintiff,

**v.**

**SOBE MIAMI, LLC, and**
**THOMAS J. DONALL,**

     Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## (D.E. 46)

**THIS CAUSE** is before the Court on Defendants SOBE Miami, LLC d/b/a Palace Bar ("Palace Bar") and Thomas J. Donall's Motion for Summary Judgment, ("Motion," D.E. 46), filed November 30, 2017.  Plaintiff Aynour Soliman filed a Response on December 22, 2017, ("Response," D.E. 50), to which Defendants filed a Reply on January 5, 2018, ("Reply," D.E. 54).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background[1]

Plaintiff worked as a server at Palace Bar—a restaurant and bar located in Miami Beach, Florida—from February 2, 2015 through October 9, 2016.  (Defs.' Facts ¶¶ 1-2.) Defendant Donall owns Palace Bar.  (Id. ¶ 3.)

---

[1]    The following facts are gleaned from Defendants' Statement of Undisputed Material Facts, ("Defs.' Facts, D.e. 47), and Plaintiff's Statement of Material Facts, ("Pl.'s Facts," D.E. 50 at 1-11.)  All facts are undisputed unless otherwise indicated.

Servers at Palace Bar are paid an hourly wage, a portion of a 20% service charge that is added to every customer's bill, and tips paid by customers at their discretion.  (Id. ¶¶ 8-9.)  In 2015 and 2016, Florida's minimum wage was $8.05, (Id. ¶¶ 10-11); "time-and-a-half" was $12.08 for non-tipped employees, and $7.55 for tipped employees, (id. ¶ 12).  According to Defendants, Plaintiff was paid $5.03 per hour, which represents the minimum wage reduced by the "tip credit" of $3.02 per hour.  (Id. ¶¶ 10-11.)  However, Plaintiff states that she was actually paid less than $5.03 per hour.  (Pl.'s Facts ¶¶ 10-11.)

The 20% service charge is split among the staff as follows: 15% to the server, 1% to the host, 1% to the food runner, 1% to the bartender, and 2% split between the manager and housemen, with the manager receiving 1/3 of the 2% and the remainder going to the housemen.  (Defs.' Facts ¶¶ 17-20.)

Although Defendants claim that the 20% service charge is referred to as "mandatory gratuity" or "auto gratuity," (Defs.' Facts ¶ 14), Plaintiff states that the service charge is a "suggested" gratuity, is not mandatory, and can be removed from the bill at the customer's discretion, (Pl.'s Facts ¶ 13).  Plaintiff states that "customers had the right and ability to not pay the service charges and often" exercised that right.  (Id. ¶ 15.)

Plaintiff's wages, less withholdings, were paid bi-weekly.  (Id. ¶ 22.)  While the servers were paid their portion of the service charge and tips at the end of their shifts, (id. ¶ 21), those monies were recorded on their paystubs, (id. ¶ 23).  According to Plaintiff, the "reported tips" entry on her paystubs stated the full amount of the 20% service charge without reduction for payouts to other staff.  (Pl.'s Facts ¶ 23.)

2

Plaintiff was paid a total of $45,353.92 in 2015, and a total of $44,620.69 in 2016; (Defs.' Facts ¶¶ 25-26); these amounts are reflected on the W-2 forms Palace Bar issued Plaintiff for 2015 and 2016, respectively, (id. ¶¶ 74-75).

Plaintiff's total compensation divided by the number of hours Plaintiff worked shows that Plaintiff consistently earned more than 1.5 times the minimum wage.  (Id. ¶ 71.)  According to Defendant's calculation, Plaintiff earned on average $26.00 per hour.[2] (Id.)  Plaintiff's portion of the 20% service charge always constituted more than 50% of her pay.  (Id. ¶ 72.)

## II.   Procedural History

On November 28, 2016, Plaintiff filed her Complaint against Defendants.  (D.E. 1.)  Count I alleges a minimum wage violation under the Fair Labor Standards Act ("FLSA") against both Defendants—specifically, Plaintiff alleges that Palace Bar was not entitled to take the tip credit and, therefore, her hourly wage fell below Florida's minimum wage.  (Id. ¶¶ 18-23.)  Count II alleges an overtime wage violation[3] against both Defendants based on Palace Bar's failure to pay Plaintiff "time-and-a-half" for all hours worked over 40 hours per week.  (Id. ¶¶ 24-27.)  Count III alleges that Defendants violated 26 U.S.C. § 7434(a) by issuing Plaintiff fraudulent W-2 forms.  (Id. ¶¶ 28-34.)

---

[2]     Although Plaintiff disputes the accuracy of the "Breadcrumbs" Reports from which Defendants calculated the number of hours Plaintiff worked, (see Pl.'s Facts ¶ 71), Plaintiff does not appear to dispute that she consistently earned more than 1.5 times the minimum wage, or offer an alternative to the $26.00 per hour calculation.

[3]     Although Count II is titled "Minimum Wage Violation of FLSA", it actually alleges an overtime wage violation.

On February 14, 2017, Defendants filed their Amended Answer and Affirmative Defenses.  (D.E. 29.)  Therein, Defendants admitted the following allegations contained in the Complaint:

> Defendant Donall was the owner, operator, and manager of Palace Bar, "and was actively involved in, supervised, and ran the day-to-day operations and financial affairs of [Palace Bar]."  (Compl. ¶ 6; Am. Answer ¶ 6.)

> Defendant Donall "was at all relevant times, and still is, a statutory 'employer' under the FLSA in that he acted, directly or indirectly, on behalf of [Palace Bar] in relation to Plaintiff, and regularly exercised authority to hire and fire employees of [Palace Bar], determined the work schedules of employees of [Palace Bar], set the rates of pay and compensation for employees of [Palace Bar], controlled the finances of [Palace Bar], and oversaw, supervised, and controlled the day-to-day operations of [Palace Bar]."  (Compl. ¶ 7; Am. Answer ¶ 7.)

Among Defendants' Affirmative Defenses: are that (1) to the extent that it is ultimately determined that some hours of work were not properly paid to Plaintiff, such amounts were de minimis; and (2) Plaintiff is exempt from the FLSA's overtime wage provisions as a commissioned sales employee.  (Answer at 5.)

On November 30, 2017, Defendants filed the instant Motion for Summary Judgment.  (D.E. 46.)  On March 14, 2018, the Parties appeared before the Court for Pretrial Conference, during which the Court heard argument regarding the instant Motion.  (See D.E. 64.)

**III.    Legal Standard**

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment can be

4

entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together

5

with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   Celotex, 477 U.S. at 323.   Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"   Id. at 324; see also Fed. R. Civ. P. 56(c).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."   Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."   Id.

## IV.    Discussion

Defendants argue that: (1) Plaintiff was a commissioned employee exempt from the FLSA's overtime wage provisions; (2) even if she was not exempt, summary judgment is still warranted on the overtime claim because Palace Bar was entitled to take the tip credit; (3) Donall was not an "employer" under the FLSA and therefore not subject to individual liability; and (4) Plaintiff's W-2s are correct and, therefore, there is no liability under 26 U.S.C. § 7434(a).  (Mot. at 4-16.)  Defendants do not explicitly argue that Palace Bar is entitled to summary judgment for the minimum wage claim in Count I of the Complaint; however, their several of their arguments appear to encompass Plaintiff's minimum wage claim.  (See id.)

6

### a.      Commissioned employee

First, Defendants argue that Plaintiff was a commissioned employee exempt from the FLSA's overtime wage provisions pursuant to the FLSA's commissioned work exemption, 29 U.S.C. § 207(i).  (Id. at 4.)  That statute provides, in relevant part:

> No employer shall be deemed to have violated [the FLSA's overtime provisions] by employing any employee of a retail or service establishment for a workweek in excess of [forty hours], if (1) the regular rate of pay of such employee is in excess of one and one-half times the [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. . . .

29 U.S.C. § 207(i).  It is undisputed that Palace Bar is a retail or service establishment and that the service charge always accounted for more than half of Plaintiff's compensation.[4]  However, the Parties dispute whether the 20% service charge constitutes a "commission" for purposes of Section 207(i).

Defendants argue that the 20% service charge added to every customer's bill constitutes a "commission."  (Id. at 6-7.)  Plaintiff argues that the 20% service charge was a discretionary tip or gratuity because customers were not required to pay it.[5]  (Resp. at 16-19.)

---

[4]      Defendants spend almost three pages of their Motion arguing that Plaintiff's share of the service charges accounted for more than half of Plaintiff's compensation, and that Palace Bar is a retail service establishment, (Mot. at 6-9); Plaintiff does not address either of these arguments in her Response.  Additionally, Plaintiff does not dispute the representation in Defendants' Statement of Material Facts that the service charge always accounted for more than 50% of her pay.  (Defs.'Facts ¶ 72; Pl.'s Facts ¶ 72.)

[5]      Plaintiff also argues that for part of her tenure as a Palace Bar employee the service charge was illegal because it was not included on the menu.  (Resp. at 19 (citing Fla. Stat. § 509.214 ("Every public food service establishment which includes an automatic gratuity or service charge in the price of the meal shall include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included.")).)  Thus, she argues that

Whether the 20% service charge constituted a commission is a question of law. Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001).   Moreover, "exemptions 'are to be construed narrowly,' and the employer shoulders the burden of establishing that it is entitled to an exemption."   Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008) (quoting Evans v. McClain of Ga., Inc., 131 F.3d 957, 965 (11th Cir. 1997)).   The employer must satisfy this burden by "clear and affirmative evidence."   Klinedinst, 260 F.3d at 1254 (quoting Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 805 (11th Cir. 1992)).

Although the FLSA's statutory provisions do not define "tip" or "commission," the implementing regulations provide guidance:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.  It is to be distinguished from payment of a charge, if any, made for the service.  Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity.

29 C.F.R. § 531.52.  On the other hand, "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees . . . ."  29 C.F.R. § 531.55(a).

Under analogous case law, a service charge is a "tip" if the customer retains discretion over its payment, and is a "commission" if the customer is required to pay it.

---

to the extent the Court deems the compensation from the service charge to be a "commission," Defendants should not be able to benefit from the service charge during the time it was illegally applied to customers' bills.  (Id.)  Because the Court finds below that the service charge was not a "commission," the Court need not address Plaintiff's illegality argument.

For example, in <u>Mechment v. Four Seasons Hotels, Ltd.</u>, 825 F.2d 1173, 1177 (7th Cir. 1987), the Seventh Circuit found that a service charge that hotels and restaurants added to banquet bills, and which was used to compensate banquet waiters, constituted a "commission" under Section 207(i), even though a collective bargaining agreement identified them as "gratuity." The Seventh Circuit reasoned that the service charge was not a gratuity "since it is not discretionary with the customer." <u>Id.</u>

Likewise, in <u>Nacembeni v. Quayside Place Partners, LLP</u>, Judge Cooke found that a service charge added by a hotel to every banquet bill, which was used, in turn, to pay the banquet staff, constituted a "commission" for purposes of determining whether the plaintiff's wages exceeded the minimum wage. No. 09-23322-Civ, 2010 WL 2351467, at *2-3 (S.D. Fla. Jun3 11, 2010). This finding was based upon the undisputed fact that "the service charge was non-negotiable, in other words, the Hotel's banquet customers had no discretion as to whether to pay the service charge or not." <u>Id.</u> at *2. <u>Cf.</u> <u>Labriola v. Clinton Entm't Mgmt., LLC</u>, No. 15 C 4123, 2017 WL 1150989, at *11 (N.D. Ill. Mar. 28, 2017) (finding "fixed," "mandatory" fees for exotic dances to be "service charges" rather than "tips" for purposes of determining whether the charges counted against the employer's minimum wage obligations under the FLSA).

Similarly, in <u>Virgin v. Escalante-Black Diamond Golf Club, LLC</u>, in analyzing whether the plaintiff was a tipped employee entitling the defendant employer to the FLSA's tip credit, the court denied summary judgment to the defendant where there was conflicting evidence in the record as to whether membership and service charges were

9

compulsory or, instead, discretionary tips.  Case No. 5:13–cv–359–Oc–10PRL, 2014 WL 12591472, at *3-4.

Finally, in a factually similar case, the United States District Court for the District of Puerto Rico denied summary judgment to the defendant employer because it had not established that a service charge added to its customers' bills was "compulsory" in nature.  Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club, 577 F. Supp. 2d 566, 573-74 (D.P.R. 2008).  This is so even though the menu notified its customers that "[a] 20% service charge shall be added" to the bill.  Id. at 574. Ultimately, the Court found a genuine issue of material fact existed as to whether the service charge was, in fact, compulsory because there was record evidence that waiters were at liberty to remove the charge if the customers did not agree to pay it, while other evidence showed only a supervisor or manager had the authority to remove it.  Id.  (In this regard, Cachola-Bonilla is distinguishable because the court in that case adopted a magistrate judge's finding that the question of whether the service charge is a tip or a commission is not a matter of law, see id. at 582, whereas the Eleventh Circuit has held unequivocally that it is a matter of law, Klinedinst, 260 F.3d at 1254.)

Based on the foregoing authority, the Court finds that for a service charge to qualify as a "commission" for purposes of Section 207(i), the customer must be required to pay it.  See Mechmet, 825 F.2d at 1177.  If payment of a service charge is within the customer's discretion, it is not a "commission," it is a "gratuity" or "tip."  See id.; see also Cachola-Bonilla, 577 F. Supp. 2d at 573-74.

10

Here, Defendants have not established by clear and affirmative evidence that the Palace Bar's customers were required to pay the 20% service charge added to their bills. To the contrary, the record evidence establishes that the 20% service charge was a discretionary gratuity.  To begin with, Palace Bar's menu states: "PALACE BAR ADDS, FOR YOUR CONVENIENCE, A <u>SUGGESTED</u> 20% SERVICE CHARGE TO ALL TABLE SERVICE BILLS.  <u>PLEASE ASK YOUR SERVER IF YOU WOULD LIKE THIS TO BE REMOVED</u>."  (Pl. Depo., Ex. 1 (emphases added).)

Additionally, Palace Bar's corporate representative, Miguel Blanco, testified at his deposition that the service charge was discretionary:

> Q.    Was it discretionary on the part of the customers, that they have to pay the service charge?
>
> A.    They have the option.
>
> Q.    If they didn't want to pay the service charge they can tell the waiter to take it off?
>
> A.    Yes.

(Blanco Dep. at 21:7-12.)   Blanco further testified that the service charge was "suggestive," (<u>id.</u> at 22:15), and that "[t]he customer has the option to remove it if they want[,]" (<u>id.</u> at 22:22-23).

Plaintiff likewise testified that although the 20% service charge was included on every bill, customers sometimes exercised their right to have it removed.  (Soliman Dep. at 34:23 - 35:9; 42:21 – 43:2.)

Defendants appear to argue that the service charge was "mandatory" because it was automatically included on every customers' bill.  (<u>See</u> Reply at 3 ("It was not the

customer's choice to add it.  The very fact that [Plaintiff] added it to every customer's bill is proof that it was not added at the customer's discretion.").)  This argument is a red herring—whether a service charge constitutes a "commission" does not depend on whether the server is required to include it on the customer's bill, but rather whether the customer is required to pay it.  See Mechmet, 825 F.2d at 1177; Cachola-Bonilla, 577 F. Supp. 2d at 573-74.

Because payment of the service charge was discretionary, the Court finds that it was not a "commission" for purposes of Section 207(i), it was a discretionary gratuity. And because the service charge was not a "commission" for purposes of Section 207(i), Plaintiff is not exempt from the FLSA's overtime provisions.  See Cachola-Bonilla, 577 F. Supp. 2d at 573-74.

**b.  Tip pool**

Defendants argue that even if the 20% service charge constitutes a "tip" and, consequently, that Plaintiff was not exempt under Section 207(i), they are still entitled to summary judgment because there was a valid "tip pool" to serve as the basis for taking the FLSA's tip credit.  (Mot. at 9-12.)  Plaintiff argues that the tip pool was invalid because managers who did not have more than de minimis service interaction with customers shared in the tip pool.  (Resp. at 20-23.)

The FLSA permits an employer to pay less than minimum wage to "tipped employees."[6]  29 U.S.C. § 203(m).   Wajcman v. Inv. Corp. of Palm Beach, No. 07-80912-CIV, 2008 WL 783741, at *3 (S.D. Fla. Mar. 20, 2008).  That is, if an employee qualifies as a "tipped employee," the employer may take what is commonly referred to as the "tip credit."  See Ash v. Sambodromo, LLC, 676 F. Supp. 2d 1360, 1366 n.9 (S.D. Fla. 2009) ("The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a 'tip credit.'")  To claim the tip credit, the employer must satisfy two conditions: (1) the employer must inform the employee of the provisions of the tip credit subsection of the FLSA; and (2) the employee must be allowed to retain all tips she receives, except where tips are pooled among employees who "customarily and regularly receive tips."  29 U.S.C. § 203(m).

It appears that the first condition is satisfied in this case, as Plaintiff does not rebut Defendants' argument that Plaintiff had notice of the relevant provision of the FLSA. (See Mot. at 9.)  However, the Parties dispute whether Palace Bar's managers—who shared in Palace Bar's tip pool—are employees who customarily and regularly receive tips.  (Mot. at 11; Resp. at 22-23.)

"A position is indisputably one that 'customarily and regularly' receives tips . . . if there is sufficient evidence that the employee is routinely tipped by patrons."  Holloway

---

[6]     "'Tipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t).  It is undisputed that Plaintiff was a "tipped employee."

v. Rocchio Tunnel Marketplace Enters., LLC, CASE NO. 15-61586-CIV-COHN/SELTZER, 2016 WL 4411344, at \*3 (S.D. Fla. Jan. 22, 2016) (citing Palacios v. Hartman & Tyner, Inc., No. 13–CIV–61541, 2014 WL 7152745, at \*6 (S.D. Fla. Dec. 15, 2014)).  "However, 'under circumstances where the challenged position's tips stem from the tip pool itself, or where no evidence of direct tipping has been presented, a Court may need to go further in order to ascertain whether the position is one which customarily and regularly receives tips.'"  Id. (quoting Palacios, 2014 WL 7152745, at \*6).  "In determining whether an employee is engaged in an occupation that 'customarily and regularly' receives tips . . . , the focus is properly drawn to the question of whether the employee performs important customer service functions, i.e. does the employee have more than de minimis service interaction with customers."  Wajcman, 2008 WL 783741, at \*3 (citing Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294 (6th Cir. 1998); Dole v. Cont'l Cuisine, Inc., 751 F. Supp. 799 (E.D. Ark. 1990); Elkins v. Showcase, Inc., 704 P.2d 977, 989 (Kan. 1985); see also Wajcman v. Inv. Corp. of Palm Beach, 620 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009) (citing Myers v. Copper Cellar Corp., 192 F.3d 546, 550 (6th Cir. 1999); Kilgore, 160 F.3d at 300–02; Roussell v. Brinker Int'l, Inc., Civil Action No. H-05-3733, 2008 WL 2714079, at \*7, \*10 (S.D. Tex. July 9, 2008); Morgan v. SpeakEasy, LLC, 2007 WL 2757170, \* 18 (N.D. Ill. Sept. 20, 2007); Townsend v. BG–Meridian, Inc., 2005 WL 2978899, \*7 (W.D. Okla. Nov. 7, 2005).  "[T]he the inquiry properly looks to both the quantity and quality of customer interaction."  Wajcman, 2008 WL 783741, at \*4.

14

In this regard, Defendants cite to the Declaration of Lucas Almeida, who was a manager at Palace Bar when Plaintiff worked there.  (Almeida Decl., D.E. 47-6 ¶ 2.) Almeida states that "[a]s a manager, I performed important customer service functions and interacted with customers throughout my shifts."  (Id. ¶ 5.)  He claims that "[s]ince everyone at Palace works with a team approach, managers sat customers, served food, bused tables, handled customer complaints, and interacted with customers to ensure they were enjoying their experience."  (Id. ¶ 6.)  He further claims that he spent the "overwhelming majority of [his] time . . . interacting with customers, serving food, seating customers, bussing tables, and handing customer complaints."  (Id. ¶ 7.)

On the other hand, Plaintiff presented her own Declaration, the Declarations of fellow servers Michael Olson and Aquiton Baptista, and former manager Fekrim Alex Haxhaj, which all contradict Almeida's Declaration.  (See Pl.'s Decl, D.E. 50-4; Olson Decl., D.E. 50-5; Baptista Decl., D.E. 50-6; Haxhaj Decl., D.E. 50-7.)  Specifically, Plaintiff, Olson, Baptista, and Haxhaj each aver that during their employment at Palace Bar,

> the managers who participated in the tip pool and distribution of tips and gratuities of the customers of the Palace, performed virtually no customers [sic] service functions whatsoever.  Specifically, and contrary to the Declaration of Lucas Almeida . . . , which I have read and reviewed prior to executing this Declaration, the Palace's managers, during my employment, did not operate under a "team concept" as Mr. Almeida describes it.  In fact during my employment the Palace's managers did not sit customers (that was handled by the hosts and hostesses), did not serve food to customers (that was handled by the servers), and did not bus customer tables (that was handled by the servers and bussers).  Almost all the managers' time each day I worked for the Palace was spent supervising, overseeing, and monitoring the work of servers and other staff, directing the work of servers

and other staff, setting schedules for servers and other staff, and reporting
to the general manager.

(Pl.'s Decl. ¶ 4; Olson Decl. ¶ 4; Baptista Decl. ¶ 4.)

Based on the conflicting evidence, the Court finds that there is a genuine issue of

material fact as to whether there was a valid tip pool at Palace Bar which would entitle

Palace Bar to claim the tip credit.  See Howard v. Second Chance Jai Alai LLC, Case No:

5:15-cv-200-Oc-PRL, 2016 WL 3349022, at *6-9 (M.D. Fla. June 16, 2016) (denying the

defendant's motion for summary judgment because there were genuine issues of material

fact as to whether certain employees had enough interaction with customers to properly

share in the tip pool); Holloway, 2016 WL 4411344, at *4 (same).

Defendants argue that even if genuine issues of material fact exist as to whether

the tip pool was valid, the Court should grant them summary judgment because Plaintiff

would only be owed $187.46, "which is de minimis and therefore Plaintiff's overtime

claims should be dismissed."  (Mot. at 12 n.8.)  Specifically,

> Calculating the hours from the Breadcrumb reports (which Plaintiff states
> are accurate SUMF at ¶ 70 and Ex. 2 to Ex. A) and the wages paid to
> Plaintiff (SUMF at ¶ 27-69 and Ex. 1 to Ex. A), assuming Plaintiff is not
> exempt under § 7(i), Plaintiff would be owed $229.17 in overtimes wages
> for 2015, but she was overpaid by $41.71 in 2016 (since she often failed
> clock-out and was paid for the time).  Thus, the total overtime owed would
> be $187.46.

(Id.)  However, Plaintiff notes that she never admitted the accuracy of the Breadcrumb

reports:

> Defendants falsely assert Plaintiff in her deposition states that the
> "Breadcrumb" reports generated by Defendants "are accurate".  This is a
> false and misleading assertion as the referenced pages of Plaintiff's
> deposition do not state anything whatsoever about Breadcrumb reports.

Rather, what Plaintiff did testify to at the referenced pages was that her "***cash out reports***" contained accurate information of the hours she actually worked. Pl. Depo. at p. 14.[7]  Those cash our [sic] reports, also known as "checkout reports", often differed significantly from, and were substantially higher in recorded hours than, the hours that were ultimately entered into the Breadcrumb reports, as Blanco was shown and acknowledged in his deposition.  Blanco Depo. at pp. 95 – 108, Exhs. 33, 34, 35, 36-A, 36-B, 37, 38, and 39.

(Pl.'s Facts ¶¶ 70-71 (footnote in original).)

To begin with, Defendants cite no authority, either in their Motion or Reply, for the proposition that the Court may grant a defendant summary judgment and/or dismiss an FLSA claim on the basis that its "de minimis."  (See Mot. at 11-12; Reply at 5.) Regardless, because there is conflicting evidence as to the hours Plaintiff worked, and because the Parties dispute the accuracy of the Breadcrumb reports on which Defendants' argument relies, the Court declines to find that Plaintiff's damages are de minimis as a matter of law.

c.      Donall as an "employer"

Defendants next argue that the claims against Defendant Donall fail because the undisputed facts establish that he is not an "employer" within the meaning of the FLSA. (Mot. at 12.)   Specifically, they argue that Donall did not determine employee compensation (except for the General Manager), did not supervise employees, and did not exercise any authority to hire and fire employees (except the General Manager).  (Id. at 13.)  They argue that Donall "served as the owner of the business in name only acting

---

[7]      "Q.: So let me ask you just about the cash out reports. Did the cash out reports accurately reflect the hours that you were working while you were working for Palace? "A.: Yes."

as the creative side for the business."  (Id.)  Plaintiff argues that these arguments fail because Defendants' admitted in their Amended Answer that Donall is an employer for purposes of the FLSA.  (Resp. at 14.)

The FLSA defines "employers" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . . ."  29 U.S.C. § 203(d).  "'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  Whether an individual falls within [the FLSA's definition of "employer" "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'"  Alvarez Perez, 515 F.3d at 1160 (quoting Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237 (5th Cir. 1973) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947))).  The Eleventh Circuit has indicated that an individual may be considered an "employer" under the FLSA where he has "operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee."  Patel v. Wargo, 803 F.2d 632, 368 (11th Cir. 1986); see also Phillips v. M.I. Quality Lawn Maint., Inc., No. 10–20698–CIV, 2011 WL 666145, at *3 (S.D. Fla. Feb. 14, 2011) ("Operational control includes things like determining employee compensation, supervising employees, and having the power to hire or fire employees.") (citing Alvarez Perez, 515 F.3d at 1160-61).

Here, there is conflicting evidence as to whether Donall exercised operational control over significant aspects of Palace Bar's day-to-day functions.  Donall executed a

18

Declaration stating that he does "not assert any real control over operations even though [he has] the ability to do so."  (D.E. 47-2 ¶ 4.)  He states that "[o]ther than hiring/firing the general manager and determining the general manager's pay," he is not involved in making operational decisions.  (Id. ¶ 5.)  He states that he does not supervise employees or determine employee compensation (other than the general manager).  (Id. ¶¶ 8-9.)

However, Defendants admitted in their Amended Answer that Donall: (1) was the owner, operator, and manager of Palace Bar, "and was actively involved in, supervised, and ran the day-to-day operations and financial affairs of [Palace Bar][,]"  (Compl. ¶ 6; Am. Answer ¶ 6); and (2) "was at all relevant times, and still is, a statutory 'employer' under the FLSA in that he acted, directly or indirectly, on behalf of [Palace Bar] in relation to Plaintiff, and regularly exercised authority to hire and fire employees of [Palace Bar], determined the work schedules of employees of [Palace Bar], set the rates of pay and compensation for employees of [Palace Bar], controlled the finances of [Palace Bar], and oversaw, supervised, and controlled the day-to-day operations of [Palace Bar]."  (Compl. ¶ 7; Am. Answer ¶ 7.)  Additionally, Donall testified at his deposition that he would visit Palace Bar at least once a week to supervise the work of the managers.  (Donall Dep. at 21:23 – 22:12.)  He stated that the restaurants managers reported directly to him.  (Id. at 22:13-21.)  He further stated that sometimes the general manager would consult with him about the decision to fire employees.  (Id. at 39:18 – 40:4.)

Based on the conflicting evidence, the Court finds genuine issues of material fact exist regarding whether Defendant Donall is an "employer" for purposes of FLSA

liability.  See Brantley v. Ferrell Elec., Inc., 112 F. Supp. 3d 1348, 1380 (S.D. Ga. 2015) (finding a genuine issue of material fact existed as to whether the owner exercised sufficient control over the company's day-to-day function to be considered an "employer" for FLSA purposes); Martinez-Pinillos v. Air Flow Filters, Inc., 738 F. Supp. 2d 1268, 1279 n.11 (S.D. Fla. 2010) (same).

### d.    Fraudulent tax return

Finally, Defendants argue that they are entitled to summary judgment on Plaintiff's claim that they issued fraudulent information on her W-2s because Defendants' correctly reported her wages.  (Mot. at 15-16.)  Plaintiff argues that there is ample record evidence showing that her paychecks, and ultimately her W-2s, inaccurately reported the total amount of service charges that she received.[8]  (Resp. at 23-24.) Specifically, she argues that her paychecks and, in turn, her W-2s reflect that she received the entire 20% service charge billed to the customers, even though she only received 15% while Defendants distributed the other 5% to the host, food runner, bartender, manager, and housemen.  (Id.)

To establish a claim of tax fraud under 26 U.S.C. § 7434, a plaintiff must prove (1) that the employer issued an information return; (2) that the information return was fraudulent; and (3) that the employer willfully issued a fraudulent information return.[9]

---

[8]       Plaintiff also argues that her paychecks inaccurately reported the hours she worked.  (Resp. at 23.)  However, Count III of the Complaint does not allege that Defendants filed fraudulent tax return information based on inaccurate hours.  (See Compl. ¶¶ 28-34.)

[9]       The Parties do not dispute whether a W-2 constitutes an "information return" for purposes of Section 7434.  See Carbonell v. Glaser, Case No.: 1:16-cv-21539-UU, 2016 WL 10933303, at *2 (S.D. Fla. Sept. 19, 2016) (denying motion to dismiss claim under Section 7434

Seijo v. Casa Salsa, Inc., No. 12–60892–Civ, 2013 WL 6184969, at *7 (S.D. Fla. Nov. 25, 2013) (citing Pitcher v. Waldman, No. 1:11–cv–148, 2012 WL 5269060, at *4 (S.D. Ohio Oct. 23, 2012)).

The Court finds that there is a genuine issue of material fact as to whether Defendants willfully issued a fraudulent W-2.  Plaintiff testified at her deposition that the amount reported on her 2015 W-2 "is definitely incorrect" because it "includes the twenty percent and Palace is reporting twenty percent completely.  They're not taking out the five percent tip out.  The five percent I never make."  (Pl.'s Dep. at 53:25 – 54:5; see also id. at 58:5-15.)  She testified that she spoke with co-workers who confirmed that Defendants' pay records reflect that servers received the entire 20% service charge.  (Id. at 54:16-19; see also id. at 59:5-10.)  Plaintiff further testified that she told her supervisors that her pay records were not correct.  (Id. at 55:2-5.)  Plaintiff further testified that her 2016 W-2 and all of her paychecks were likewise inaccurate for the same reasons.  (Id. at 55:25 – 56:10; id. at 65:7 – 66:17.)

Defendants point to Blanco's declaration, which states that in 2015, Palace Bar paid Plaintiff $45,353.92, and that amount is reflected on her 2015 W-2.  (Blanco Decl.

---

where the defendant argued, inter alia, that a W-2 is not an "information return" as defined by Section 7434); Bolling v. PP&G Inc., CIVIL NO.: WDQ-15-911, 2015 WL 9255330, at *6-7 (D. Md. Dec. 17, 2015) (denying motion to dismiss claim under Section 7434 that employer fraudulently issued an incorrect W-2 form).

Furthermore, the Parties do not dispute the issue of willfulness.  "[W]illfullness requires more than knowledge.  To prove willfulness [sic], the plaintiff must show that the defendants, aware of the duty purportedly imposed by Section 7434, specifically intended to flout the statute."  Tran v. Tran, 239 F. Supp. 3d 1296, 1298 (M.D. Fla. 2017) (citing Cheek v. United States, 498 U.S. 192, 201-02 (1991)).

Because the Parties did not raise or brief these issues, the Court will not address them. However, the Court may require the Parties to brief the issue of whether a W-2 constitutes an "information return" for purposes of Section 7434 prior to trial.

¶¶ 71, 73.)  He also testified that in 2016, Palace Bar paid Plaintiff $44,620.69, and that amount is reflected on her 2016 W-2.  (Id. ¶¶ 72, 74.)  Defendants do not cite any evidence specifically showing that Plaintiff's paychecks and W-2s only included the portion of the service charge Plaintiff actually received.

Because there is conflicting evidence regarding the accuracy of the amounts reflected on Plaintiff's 2015 and 2016 W-2s, the Court finds that Defendants are not entitled to summary judgment as to Count III.

## V.    Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (D.E. 46) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 14th day of May, 2018.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**